TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos la parte apelada Supermercado Guaynía, Inc., e Integrand Assurance Company, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de *618 Ponce. Mediante dicho dictamen, el tribunal a quo declaró Con Lugar la demanda incoada.
Por las razones que expondremos a continuación, se Modifica la Sentencia-emitida.
I
Conforme surge del recurso ante nuestra consideración, los sucesos que dieron génesis al caso de marras se remontan al 6 de marzo de 1998. En dicha fecha, Elsa Feliciano Santiago, en adelante la apelada, visitaba el Supermercado Guaynía, Inc., en adelante, Supermercado, con el propósito de realizar ciertas compras. Cuando se disponía a abandonar el lugar se percató de que había omitido comprar una escoba. Presta a comprar la misma, se dirigió a la góndola del Supermercado destinada a la ubicación de dicho artículo. Mientras discurría por el pasillo, en busca del mismo, una lata de comida de perro de aproximadamente 23 oz. impactó su rostro y pecho. La apelada sufrió un desmayo producto del golpe y fue socorrida por el Gerente del local comercial.
La secuela de eventos reseñados motivaron que el 10 de marzo de 1999, la apelada incoara; demanda sobre daños y perjuicios ante el Tribunal de Primera Instancia. Luego de varios trámites procesales, incluyendo, entre otros, una primera moción de desestimación, la parte apelante presentó una “Moción Solicitando la Desestimación de la Demanda”. En dicho escrito alegó que la acción estaba prescrita. Ambas partes presentaron memorandos de derecho en apoyo a su contención. Mediante Resolución emitida el 30 de junio de 1999, el tribunal a quo dictaminó que el término para presentar la acción había sido interrumpido, por lo que la reclamación no estaba prescrita.
Llegada la fecha de la vista, y completado el desfile de la prueba de la apelada, la parte apelante solicitó la desestimación de la demanda, a tenor con lo dispuesto en la Regla 39.2(c) de las de Procedimiento Civil. 32 L. P.R.A., Ap. Ill, R. 39.2. Argüyó que no se había presentado prueba demostrativa de que la apelada tenía derecho a la concesión de un remedio. El tribunal a quo dictó Sentencia desestimando la demanda.
Inconforme con esta determinación, la apelada recurrió a este Tribunal. Mediante Sentencia emitida el 29 de junio de 2001, esta Curia revocó la sentencia recurrida. Dictaminamos que el Tribunal de Primera Instancia había incidido al concluir que la prueba de la apelada no había sido suficiente para establecer los elementos de la causa de acción y al desestimar la demanda en esa etapa de los procedimientos. Sostuvimos que lo acertado era requerirle a la parte apelante que presentara su caso, y a la luz de la prueba presentada por ambas partes, ponderar la misma y emitir el dictamen que procediera.
Así las cosas, el tribunal a quo, luego de evaluar la totalidad de la prueba, emitió dictamen declarando con lugar la demanda interpuesta. En su consecuencia, condenó a la parte apelante al pago solidario de $9,500.00, más intereses legales desde la presentación de la demanda, costas, intereses por temeridad y honorarios de abogado por la cantidad de $1,500.00.
Inconforme con dicha determinación, acude ante nos la parte apelante. A pesar de los requerimientos efectuados, la apelada no sometió alegato. Procedemos a resolver.
II
En su escrito, la parte apelante nos plantea que incidió el Tribunal de Primera Instancia al no desestimar originalmente la demanda por prescripción extintiva de la causa de acción; al declarar Con Lugar la reclamación cuando la causa adecuada del accidente fue la culpa de la apelada; al imponer una cuantía excesiva y al imponer honorarios de abogado y el pago de intereses por temeridad.
III
La figura de la prescripción extintiva es materia sustantiva y no procesal, regida por las disposiciones del Código Civil como una de las formas de extinción de las obligaciones. El fundamento detrás de esta figura es el *619 imperativo de castigar la inercia en el ejercicio de los derechos y asegurar el “señorío de las cosas” al evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones. Manuel Albaladejo, Derecho Civil, lOma. ed., T.I, Vol. 2do, see. 107, págs. 493-534, Barcelona, (1989); Martínez v. Soc. de Gananciales, 145 D.P. R. 93 (1998); Cintrón v. E.L.A. 127 D.P.R. 582 (1990); Silva Wiscowich v. Weber Dental Mfg. Co., 119 D.P.R. 550 (1987); Colón Prieto v. Géigel, 115 D.P.R. 232 (1984).
La interrupción de la figura de prescripción se basa, por tanto, en la actividad o ruptura de aquella inercia. El fundamento reconocido de la interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. Feliciano v. A.A.A., 93 D.P.R. 655, 660 (1966).
En el Art. 1873 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5303, se establece que la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.
De las anteriores, en lo que respecta a este caso, sólo nos atañe la interrupción de la prescripción extrajudicialmente. A tales efectos, el término queda interrumpido en dos (2) circunstancias, con la oportuna reclamación extrajudicial al deudor o mediante el reconocimiento de éste de la existencia de la deuda.
En lo concerniente a la reclamación extrajudicial, comenzaremos señalando que ésta, además de interrumpir el transcurso del término prescriptivo de las acciones, tiene como propósito fomentar las transacciones extrajudiciales y notificar, a grandes rasgos, la naturaleza de la reclamación.
Como la ley no dispone una formalidad de acto para esta causa interruptora, admite como tales todos aquellos en que la voluntad del acreedor de preservar su derecho quede patente. De León v. Caparra Center, 147 D.P.R. 797 (1999); Galib Frangle v. El Vocero de P.R., 138 D.P.R. 560 (1995).
Ante la infinidad de gradaciones entre lo que es un recordatorio y una reclamación, el Tribunal Supremo acoge lo expresado por Albaladejo al comentar que:

“...entre el mero recordatorio de una deuda, sin ninguna dosis de reclamar su paga, y el puro acto de exigir de forma inexorable éste, hay una serie de posibilidades intermedias, en las que debe entenderse que hay reclamación y, por tanto, interrupción de la prescripción, siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad y de forma más o menos tajante o apremiante, se muestra la decisión de obtener el pago.

[[Image here]]
Esta postura recoge la contención de que la institución de la prescripción extintiva responde a una presunción legal de abandono, derivado del hecho del transcurso del tiempo determinado sin reclamar un derecho. Sin embargo, ninguno de los intereses a los cuales responde es absoluto -de un lado, salvaguardar un derecho, del otro, darle carácter definitivo a la incertidumbre de una posible reclamación-, sino que deben ser aquilatados en su justa proyección. Santiago v. Ríos Alonso, 156 D.P.R._(2002), 2002 J.T.S. 21.
No obstante, lo heterogéneo del modo a utilizarse, toda reclamación extrajudicial deberá cumplir con los siguientes requisitos para que constituya una interrupción a la prescripción: (1) debe ser oportuna, lo que exige que sea presentada dentro del término establecido; (2) el reclamante debe poseer legitimación, por lo que la reclamación debe ser ejercida por el titular del derecho o acción cuya prescripción pretende interrumpirse; (3) el medio utilizado para realizar la reclamación debe ser idóneo; y (4) debe existir identidad entre el derecho reclamado y aquél afectado por la prescripción. Maldonado v. Russe, 153 D.P.R._(2001), 2001 J.T.S. 17; De León v. Caparra Center, supra; Galib Frangle v. El Vocero de P.R., supra.
*620 Ahora bien, la reclamación extrajudicial no debe ser confundida con el acto de reconocimiento de deuda. Son dos medios distintos de interrupción. Aunque como señalara el Tribunal Supremo, los mismos pueden coincidir en determinado caso. Así, puede haber una reclamación extrajudicial al deudor, y éste reconocer la deuda al serle hecha la reclamación. No puede concederse, sin embargo, como acto de reconocimiento de deuda las conversaciones y gestiones que sobre una posible transacción lleven a efecto las partes. Díaz de Diana v. A. J.A.S. Ins. Co. 110 D.P.R. 471 (1980).
Es decir, puede darse el supuesto de que, luego de hecha la reclamación extrajudicial, el acreedor y el deudor comiencen un proceso de negociación para disponer de la reclamación. En este caso se entiende que el plazo se interrumpió el día en que el deudor conoció de la reclamación. Acosta Quiñones v. Matos Rodríguez, 135 D.P.R. 668 (1994). Sin embargo, las ofertas de transacción que haga el sujeto pasivo del derecho con posterioridad a la reclamación, no pueden considerarse como un reconocimiento de deuda, a los fines de interrumpir la prescripción. Id.
La jurisprudencia ha sido enfática al disponer que el hecho de que un litigante haga ofertas de transacción o de arreglo antes del pleito o durante su tramitación, nunca puede estimarse por sí sólo como un reconocimiento de su responsabilidad, y a lo sumo lo que significa es que desea evitar el pleito o su continuación. Díaz de Diana v. A.J.A.S. Ins. Co., supra.
Lo anterior responde al supuesto de que el acto de reconocimiento de la deuda por el deudor (que interrumpe la prescripción), tiene que comunicar la intención específica del deudor de reconocer la supervivencia del derecho ajeno; tiene que ser espontáneo, claro e inequívoco. Nunca deduciéndolo de actos o conducta de los que sólo indirectamente y de forma dudosa pudiera desprenderse aquella conformidad con la absoluta eficiencia del derecho contraído. Id.
IV
Por otro lado, la norma es clara al disponer que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Argüello López v. Argüello García, 154 DPR _(2001), 2001 J.T.S. 127; Trinidad García v. Chade, 153 D.P.R._(2001), 2001 J.T.S. 10; Quiñones v. Manzano, 141 D.P.R. 139 (1996).
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello López v. Argüello García, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Id.; Pueblo v. Bonilla Romero, 120 D.P.R. 92, 111 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello López v. Argüello García, supra.
De igual forma, ha establecido el Tribunal Supremo que “la declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito". Miranda Soto v. Mena Eró, 109 D.P.R. 473, 482 (1980); Alicea v. Sucn. F. Gil Rivera, 87 D.P.R. 789, 790 (1963); Villaronga, Com. v. Trib. de Distrito, 74 D.P.R. 331, 345 (1953).
Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y *621 de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987).
Sin embargo, un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hospital La Concepción, 115 D.P.R. 721, 728 (1984).
En conclusión, reiteramos una vez más, la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Trinidad García v. Chade, supra.
y
Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia ante nuestra consideración.
En primer término, la parte apelante nos señala que incidió el Tribunal de Primera de Instancia al no desestimar la demanda no empece haber transcurrido el término prescriptivo para instar la misma. Específicamente sostiene que incidió el tribunal a quo al determinar que el término prescriptivo fue interrumpido mediante reclamación extrajudicial.
Comencemos señalando que surge de la Sentencia apelada que el Tribunal de Primera de Instancia, luego de escuchar la prueba presentada por las partes y estudiar detenidamente los memorandos en apoyo a su contención, concluyó que la demanda había sido oportunamente presentada. Determinó el tribunal apelado que el término prescriptivo comenzó a decursar el 6 de mayo de 1998, fecha en que ocurrieron los hechos que dan base a la reclamación. Asimismo entendió probado que dicho plazo fue interrumpido por la apelada “unas semanas más tarde” cuando ésta acudió al Supermercado a requerir se le reembolsaran los gastos médicos incurridos a consecuencia del accidente. En dicha fecha, notificó que era su intención reclamar una indemnización por los demás daños sufridos. A esos fines, se le proporcionó el número de póliza y el nombre de la compañía aseguradora que habría de responder. La demanda fue presentada el 10 de marzo de 1999, pocos días después de cumplirse el año de ocurrido el accidente.
Somos de opinión que las gestiones realizadas por la apelada cumplen con los parámetros exigidos por la jurisprudencia. Establecido el hecho de que la apelada oportunamente le manifestó personalmente a la parte apelante su intención específica de que ésta debía resarcirle por los daños sufridos a consecuencia del accidente, forzoso es concluir que la reclamación file incoada dentro del término prescriptivo.
El segundo error planteado por la parte apelante descansa en el alcance de nuestra función revisora como tribunal apelativo. Dicha parte alega que incidió el foro de instancia al declarar Con Lugar la demanda. Impugna dicha determinación alegando que los daños sufridos por la apelada se debieron única y exclusivamente a su propia culpa. En su consecuencia, entiende que el tribunal a quo abusó de su discreción al conceder la reclamación, a pesar de que desfiló prueba tendente a establecer que la apelante tumbó la lata con la escoba que se prestaba a comprar.
Surge de la Sentencia apelada que el Tribunal de Primera Instancia determinó que la apelada había sufrido daños físicos producto de la negligencia de la parte apelante al no prever las consecuencias que la mala colocación de los potes podía producir. Por otro lado, una lectura de la exposición narrativa de la prueba nos convence de que el error no fue cometido. Veamos.
La apelada fue al Supermercado acompañada de su vecino. Luego de finalizada las compras, la apelada se *622 recordó que había olvidado comprar una escoba, por lo que fue a buscarla. Para llegar al lugar donde estaban ubicadas las escobas en el Supermercado, tenía que pasar por la góndola donde exhibían las latas de comida para perros. Cuando la apelada pasó por esa góndola sintió lo que describió como “aquéllo que se viene encima de mf’ y que creía era un tiro, “porque fue tan fuerte que me noqueó”.
Declaró la apelada que esa parte del Supermercado es más calmada que el resto; que caminaba por el pasillo “derechita” a buscar la escoba; que llevaba solamente una cartera, iba bien vestida y usaba zapatos de plataforma; que en el pasillo no había nada que le impidiera el paso, que lo que estaba mal puesto eran los potes!
Que ella iba caminando a recoger la escoba y que frente a la comida de perro “aquello voló y le dio tan fuerte que en el momento se balanceó y se cayó”. Describió los potes como de 23 onzas y testificó que estaban bien altos y mal puestos. Se le preguntó sobre la distancia entre el lugar donde recibió el golpe y las escobas, y basándose en su contestación, se estipuló que eran como ocho (8) pies. Testificó que se había sentido bien mal, incómoda y con dolor en el ojo.
Puede apreciarse que la determinación del tribunal a quo está respaldada por la pmeba desfilada. En su consecuencia, esta Curia no dejará sin efecto la misma. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hospital La Concepción, 115 D.P.R. 721, 728 (1984).
Estimamos pertinente expresamos sobre el argumento de la parte apelante a los efectos de que el tribunal a quo abusó de su discreción al no otorgarle credibilidad al testimonio del Gerente del Supermercado. Este testificó que la apelante había admitido haber tumbado la lata de comida de perro accidentalmente al tomar la escoba.
Reiteramos que este Tribunal no intervendrá con la adjudicación de credibilidad del tribunal a quo. Trinidad García v. Chade, supra. Máxime cuando la pmeba confirma que la apelada testificó reiteradamente que, excepto su cartera, no tenía nada en las manos cuando caminaba a buscar la escoba. Testificó que fue en el momento en que se dirigía a buscar la escoba que recibió el impacto de la lata de comida de perros. Es decir, antes del accidente la apelada no tenía la posesión de la escoba.
La parte apelante nos señala como tercer error que la cuantía concedida es excesivamente alta. Según se conoce, en nuestro ordenamiento la responsabilidad civil en daños y perjuicios postula el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. Rivera Rodríguez v. Tiendas Pitusa, Inc., 148 D. P.R. (1999), 99 J.T.S. 107; S.L.G. v. F.W. Woolworth & Co., 143 D.P.R. 76 (1997); García Pagan v. Shiley Caribbean, 122 D.P.R. 193 (1988).
Por daño se entiende todo aquel menoscabo material o moral que a consecuencia de un acontecimiento .o evento determinado sufre una persona, ya bien sea en sus bienes vitales naturales, en su propiedad o en su patrimonio. Cintrón Adorno v. Goméz, 147 D.P.R. 576 (1999); Galib Frangie v. El Vocero, Inc., supra; García Pagan v. Shiley Caribbean, supra.
Este menoscabo se clasifica, de ordinario, en daño patrimonial y no patrimonial. Como daños patrimoniales se entienden aquéllos que producen un menoscabo valorable en dinero sobre los intereses patrimoniales del peijudicado. Mientras, los no patrimoniales son, en principio, aquéllos cuya valorización en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria. Galib Frangie v. El Vocero, Inc., supra.
El resarcimiento o indemnización pecuniaria consiste en atribuir al peijudicado la cantidad de dinero suficiente para compensar su interés peijudicado. Es como uno subrogación real en que el dinero ocupará el *623 lugar de los daños y perjuicios sufridos, siendo una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado. Rivera Rodríguez v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra; García Pagan v. Shiley Caribbean, supra.
Ocasionando un menoscabo en la esfera jurídica de otra persona, la reparación que procede consiste en reintegrar esa esfera lesionada a su estado anterior del daño. Sólo cuando no sea posible esa reintegración al estado originario se acudirá a verificar la reparación en dinero. Galib Frangie v. El Vocero, Inc., supra; Rodríguez Cancel v. A.E.E, 116 D.P.R. 443 (1985).
Por lo que la reparación puede verificarse de dos formas: (1) la reparación natural o reintegración en forma específica, o (2) la indemnización en dinero. Estas dos alternativas son mutuamente excluyentes. Galib Frangie v. El Vocero, Inc., supra; Rodríguez Cancel v. A.E.E, supra.
La alternativa inicial de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño constituye la solución ideal, por lo que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible. Galib Frangie v. El Vocero, Inc., supra.
En el segundo caso, el dinero muchas veces no puede ser paragonado con el dolor padecido, pero con éste se persigue proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido. Cintrón Adorno v. Goméz, supra; Riley v. Rodríguez de Pacheco, 119 D.P.R. 762 (1987).
El derecho a ser compensado no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el computo de los daños. Rivera Rodríguez v. Tiendas Pitusa, Inc., supra 99, S.L.G. v. F.W. Woolworth & Co., supra.
Al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo de nuestra responsabilidad civil. Rivera Rodríguez v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra. Por ejemplo, los sufrimientos mentales y físicos son cuantificables al infinito, por lo que sin unos límites razonables, la indemnización dejaría de tener la característica de resarcimiento para convertirse en una punitiva. Riley v. Rodríguez de Pacheco, supra.
La gestión judicial de estimación y valorización de los daños es, pues, una difícil y angustiosa labor, al no existir un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Nieves Cruz v. Universidad de Puerto Rico, 151 D.P.R._(2000), 2000 J.T.S. 91; Rodríguez Cancel v. A.E.E, supra.
Mientras tanto, esta labor descansa en la sana discreción del juzgador. Los tribunales de instancias están en principio en una mejor posición para apreciar y determinar los daños sufridos. Ello es así, en cuanto son éstos los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Rodríguez Cancel v. A.E.E, supra.
De ahí surge una norma de abstención judicial. Conforme a ésta, un foro apelativo no interviene, de ordinario, con la adjudicación de los daños realizada por el Tribunal de Primera Instancia, a menos que la cuantía concedida resultase ridiculamente alta o extremadamente baja. En todo caso, la parte que solicita la modificación de las sumas concedidas a nivel de primera instancia, viene obligada a demostrar la existencia de circunstancias que lo justifiquen. Nieves Cruz v. U.P.R., 151 D.P.R. _ (2000), 2000 J.T.S. 91; Rivera Rodríguez v. Tiendas Pitusa, Inc., supra.
*624 Ahora bien, ello no implica una renuncia de nuestra función revisora cuando la compensación ordenada está desprovista de apoyo en el récord. Véase, Sanabria v. Estado Libre Asociado, 132 D.P.R. 769 (1993); Riley v. Rodríguez de Pacheco, supra; Urrutia v. A.A.A., 103 D.P.R. 643, 648 (1975).
Esbozado lo anterior, la parte apelante aduce que el Tribunal de Primera Instancia no hizo determinación alguna sobre la gravedad de la herida en el rostro de la apelada, así como de la presencia o no de un lesión perceptible y/o desfigurante, ni del montante de los gastos médicos.
Lá Apelada sufrió unos daños que, conforme la prueba aquilatada y creída por el Tribunal de Primera Instancia, merecían ser resarcidos con la cantidad concedida. Por otro lado, la parte apelante no nos pone en posición de determinar lo contrario. La parte que solicita la modificación de las sumas concedidas viene obligada a demostrar la existencia de las circunstancias que hacen meritorio que se modifiquen las mismas. Ante este reclamo, y considerando que surge del récord que la apelada sufrió pérdida parcial de visión en el ojo derecho, padeciendo aún de dolor en el mismo y de dolores de cabeza, no reduciremos la cuantía concedida.
Finalmente señala la parte apelante en su recurso, que incidió el tribunal a quo al imponerle honorarios de abogado e intereses por temeridad. El error se cometió.
En el caso de autos, el Tribunal de Primera Instancia determinó que la parte apelante había actuado con frivolidad al litigar el presente caso y le impuso a dicha parte una condena de $1,500.00 por concepto de honorarios de abogado e intereses por temeridad.
La Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. HI, R. 44.1, dispone, en su inciso (d):

“En caso en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”

Por su parte, la Regla 44.3(b), supra, dispone, en lo pertinente:

“El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo [correspondiente] ... desde la radicación de la demanda, en todo caso de daños y perjuicios, ...y hasta la fecha en que se dicte la sentencia a computarse sobre la cuantía de la sentencia...

La condena en honorarios de abogado e intereses bajo las disposiciones anteriores, ha expresado el Tribunal Supremo de Puerto Rico, es imperativa cuando el tribunal sentenciador concluye que una parte ha sido temeraria. Dicha determinación ha de inferirse del pronunciamiento del tribunal imponiendo la condena de honorarios de abogado y/o de intereses. Rivera Rodríguez v. Tiendas Pitusa, Inc., supra; Pérez v. Col. de Cirujanos Dentistas de P.R., 131 D.P.R. 545, 563 (1992).
El propósito de la imposición de honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos trabajo e inconveniencias de un pleito. Véanse, Fernández v. S.J. Cement, 118 D.P.R. 713, 718 (1987); Soto v. Lugo, 76 D.P.R. 444, 448 (1954).
Ef Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Véase, Rivera Rodríguez v. Tiendas Pitusa, Inc., supra.
*625 No constituye temeridad cuando existe una discrepancia honesta en tomo al derecho aplicable o cuando se trata de una cuestión novel, no resuelta por el Tribunal Supremo. Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 1998); Rivera v. A & C Development Corp., 144 D.P.R. 450 (1997).
El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, Miranda v. E.L.A., 137 D.P.R. 700 (1994); Ramírez v. Club Cala de Palmas, 123 D.P.R. 339 (1989); Fernández v. San Juan Cement, 118 D.P.R. a la pág. 717; Raluán Corp. v. Feliciano, 111 D.P.R. 598 (1981). El Tribunal apelativo sólo intervendrá en este tipo de caso cuando el Tribunal de Primera Instancia hubiera abusado de su facultad. Ramos Báez v. Bossolo López, 143 D.P.R. 567(1997); Cotto Morales v. Ríos, 140 D.P.R. 604 (1996).
Al cuantificar los honorarios de abogado por temeridad, los tribunales pueden tomar en consideración factores tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el caso, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse y la habilidad y reputación de los abogados en el caso. Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
El factor determinante en dicha determinación, sin embargo, habrá de ser el grado o intensidad de la conducta temeraria o frívola. Blás v. Hosp. Guadalupe, supra; Corpak Art Printing v. Ramallo Brothers, 125 D. P.R. 724 (1990).
En cuanto a los intereses por temeridad, bajo la citada Regla 44.3(b), su imposición está similarmente confiada a la discreción del Tribunal. Quiñones López v. Manzano Posas, 141 D.P.R. 139 (1996); Torres Ortiz v. E.L.A., 136 D.P.R. 556 (1994).
Un análisis ponderado del trámite procesal del caso de autos revela que abusó de su discreción el tribunal a quo al determinar que la parte apelante fue temeraria. En los testimonios vertidos en corte abierta hubo una gama de contradicciones que hacía imperativo que el Tribunal de Primera Instancia dependiera sustancialmente de elementos subjetivos para la adecuada resolución del pleito. Por tanto, la determinación de negligencia estaba supeditada a la credibilidad que le mereciera la prueba testifical al juzgador de los hechos. Ante tal cuadro fáctico, la parte apelante tenía el derecho de presentar prueba y defenderse de las imputaciones de negligencia habidas en su contra. No se trata aquí de un litigio que pudo haberse evitado. Ante la ausencia de prueba en contrario, no encontramos justificación para la imposición de honorarios de abogado e intereses legales por temeridad a la parte apelante.
VI
Por los fundamentos expresados anteriormente, se Modifica la Sentencia a fin de eliminar la suma concedida en concepto de honorarios de abogado e intereses por temeridad. Así modificada, se Confirma la misma.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida I. Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 5
1. KLAN-01-00125

2. Id.